IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

Plaintiff

v.                                      CASE NO.: 2:22-cr-00154

ANDRE DEWAYNE WILLIAMSON

Defendant

## DEFENDANT'S MOTION FOR INDICATIVE RULING ON MOTION FOR NEW TRIAL

Comes now the defendant, Andre Williamson, by counsel Richard W. Weston and moves the Court according to Federal Rule of Criminal Procedure ("F.R.Crim.P.") 37 to issue an indicative ruling on a motion for a new trial under F.R.Crim.P. 33. This motion's basis is a juror's untruthful voir dire answers that, if truthful, would have resulted in valid cause challenge.

I.      BACKGROUND

A Superseding Indictment charged drug and weapon violations against Williamson on December 6, 2022. (ECF Doc. 52). On March 23, 2023, he proceeded to trial in this Court and was convicted of all counts. (ECF Doc. 117). On April 5, 2023, Williamson, via trial counsel, filed his Motion for New Trial and subsequently filed a supplement to this motion. (ECF Docs. 123 & 140). The motions' grounds were three issues of prosecutorial misconduct. *Id*. The motions were denied on September 25, 2023. (ECF Doc. 165). Following sentencing,

Williamson filed his notice of appeal. (Docs. 171 & 178). The Fourth Circuit Court of Appeals relieved trial counsel and appointed undersigned counsel to prosecute the appeal. (Doc. 182). While this District Court retains limited jurisdiction during the pendency of an appeal under F.R.Crim.P. 35(a) and F.R.A.P 4(b), those circumstances are not present in this case. The Fourth Circuit Court of Appeals now has jurisdiction under its Case Number 23-4601.

While preparing the appeal, new evidence was discovered which requires a new trial. As will be discussed below, the facts and legal grounds are separate and distinct from the grounds asserted in Mr. Williamson's previous motions for new trial. Because this Court does not currently have jurisdiction to consider a F.R.Crim.P. 33 motion for a new trial, Mr. Williamson moves this Court to act under F.R.Crim.P. 37, which provides, in relevant part:

Rule 37. Indicative Ruling on a Motion for Relief That Is Barred by a Pending Appeal

(a) RELIEF PENDING APPEAL. If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:

(1) defer considering the motion;
(2) deny the motion; or
(3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

———————————————

A.  The Juror's Evasion

During voir dire, the jurors were asked numerous questions to determine their fitness. The questions included:

Ladies and gentlemen, are you, or any member of your immediate family, employed by or connected in any way with any agency of government, with any agency of government having to do with law enforcement?

Ladies and gentlemen, aside from that, are any of you acquainted with anyone who serves on the staff or as an Assistant United States Attorney in the United States Attorney's Office in this district?

Ladies and gentlemen, are you, or -- have you, or any member of your immediate family, ever been involved with any conflict, controversy, or litigation with any department or agency of the United States, whether it's the United States Attorney's Office or any other agency of the government of the United States?

Andre Williamson, Voir Dire Tr. at 34, 52, 66 (March 21, 2023)(Exhibit 1).

▮▮▮▮▮▮ served on the jury and voted to convict Mr. Williamson.

See Williamson, Voir Dire Tr. at 130; Andre Williamson, Trial Tr. at 344 (March

21, 2023)(Exhibit 2). ▮▮▮▮▮ answered yes to the first question of being

employed in law enforcement. Williamson, Voir Dire Tr. at 26. He responded

negatively to the other two questions. Williamson, Voir Dire Tr. at 52, 66. After

these general answers, the Court questioned ▮▮▮▮ about his previous law

enforcement experience. Williamson, Voir Dire Tr. at 103. ▮▮▮▮ responded

that he is "a retired police ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ Williamson, Voir Dire Tr. at 26. He then recounted his career working

for the ▮▮▮ Police Department, ▮▮▮▮▮▮▮ Sheriff's Department, and

▮▮▮▮▮Police Department. Williamson, Voir Dire Tr. at 26. Defense counsel

questioned him further—▮▮▮ detailed his prior work using confidential

informants for drug purchases and listed many of the departments he associated

with on drug task forces, including the ▮▮▮▮▮▮▮ Police and the ▮▮▮▮

3

██████ Sheriff's Department. Williamson, Voir Dire Tr. at 103-5. He worked with

the drug task force "until 2012, when I retired." Williamson, Voir Dire Tr. at 104.

He assured the Court that, despite his previous work with confidential informants,

he could be impartial and his prior experience would enhance "whether they've

(law enforcement) done right or wrong..." Williamson, Voir Dire Tr. at 105. No

motion was made to strike ██████ and he ultimately voted to convict Mr.

Williamson.

B.  ███████████████████████████████
████████████

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

Juror ██████ was deeply entangled in this saga ██ ████████████████

██████ ██████████████████████ Exhibit 6, ¶3. He investigated the

murder case against ████████████████████████████

██████████████████ He then swiftly resigned as ██████████████████

---

[1] ███████████████████████████████████████████
████████████████████████████████████████
████████████████

████████████████████████████████████████████████

████████████████████████████

During this period, the FBI's investigation of ████████████

████████ led to a guilty plea in a scheme involving numerous ████████

████████ Exhibit 6. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████  ████████  ████████████████████

████████████████████████████████████████  ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ and others went

to federal prison over this scheme. ████████ was never charged.

When ████████ illegality  was  revealed, ████████████████

████████████████████████████ was immediately fired. Exhibit

7. ████████████████████████████████████  ████████  ████

████████████████████████████████ the charges against ████████

─────────────────────────

[2] ████  ████  ████████████████████████████████████
████  ████  ████████████████████████████████████

were dismissed because " ████████████████████████████ *Id.* ██████

████████████████

████████████████████████████

██████████████. ██████████ authorities promptly notified the FBI about

these boxes and they were turned over to federal investigators. *Id.* Assistant U.S.

Attorney ████████ stated his office was ████████████████████████████

████████████████ ██████████ ████████████████████████."

*Id.* Again, ██████ was never charged with a crime although, upon information and

belief, he did receive a target letter.

II.    ARGUMENT

Mr. Williamson asks this Court to issue an indicative ruling on this

F.R.Crim.P. 33 motion for new trial. Specifically, he requests a ruling that the

motion raises a substantial issue requiring remand so this Court has jurisdiction to

decide the issue on the merits. See F.R.Crim.P. 37(a)3). This motion is made under

F.R.Crim.P. 33(b)(1) which states that a new trial motion based on newly discovered

evidence is timely if filed within 3 years after the guilty verdict. The defendant was

not aware of any of the above information but would have been if ████████ had

truthfully answered the voir dire questions. Furthermore, this evidence is only

known to the undersigned counsel as he represented ████████████

A substantial issue is raised because truthful answers would have resulted in

a cause strike. In the Fourth Circuit, as this Court is well aware, "to obtain a new

trial...a party must first demonstrate that a juror failed to answer honestly a material

question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *United States v. Loughry*, 983 F.3d 698, 709 (4th Cir. 2020)(citing *McDonough Pwr. Equip. v. Greenwood*, 464 U.S. 548, 556 (1984); *Conaway v. Polk*, 453 F.3d 567, 585 (4th Cir. 2006)).

(1)  Failure to honestly answer a material question

Juror ████'s untruthfulness began when he repeatedly referred to himself as a retired police ████. Williamson, Voir Dire Tr. at 25-6. He identified himself as "a retired police ████████████████..." and when asked by the Court if he was "retired now" he responded "[y]es, sir, I am. Williamson, Voir Dire Tr. at 26. Later when he was asked what years he worked on a drug task force he responded that he worked on it until retirement. Williamson, Voir Dire Tr. at 104. According to Black's Law Dictionary, "retired" is "the act of being in retirement from working and with no plans to return to work.[3]" ████████ did not retire from the ████ ████████ without plans to return to work. Instead, he immediately began working for the ████████████ Department. Exhibit 7. And then he was quickly fired from that position for apparent malfeasance. Exhibit 7.

Even more troubling is ██████'s answer that he had never been "involved in any conflict, controversy, or litigation with any department or agency of the United States..." Williamson, Voir Dire Tr. at 66. While he may have never been in actual litigation with the FBI or the U.S. Attorney's office, the article displays he was at the least involved in a conflict and controversy. U.S. Attorney ████ stated there was a

---

[3] Black's Law Dictionary, accessed December 4, 2023, https://thelawdictionary.org/retired/

federal investigation into ███████████████████ evidence. Exhibit 7. The evidence that █████ █████████████████████ turned over to federal investigators. Exhibit 7. This investigation could only have been centered on ██████'s actions. Furthermore, upon information and belief, ████████ received a target letter from the █████████████████████ United States Attorney's Office. Because he was never charged with a crime, the target letter receipt suggests he met with federal law enforcement and/or U.S. Attorneys ███████████████ ███████████████ ████████████████ scandal. If true, this would also make his answer untrue that he was not acquainted with anyone in the United States Attorney's office.

(2) The correct response would have provided a valid basis for a challenge for cause

There does not appear to be a precise statutory, or caselaw, definition of the legal requirement for a strike for cause. The best guidance comes from *Patton v. Yount* and focuses on whether the juror was biased or impartial. 467 U.S. 1025, 1038 (1984). This determination of bias is "essentially one of credibility." *Id.* ████████ stated that he could be impartial in light of his prior law enforcement experience and it "would probably enhance whether they've (law enforcement) done right or wrong." Voir Dire Tr. at 26. This statement made by a retired officer with an unblemished record could be reasonably relied upon. But ████████ was neither retired nor unblemished— he was fired as █████ deputy while neck-deep in a █████████████ scheme to ██████ ███████████. ██ ████████ ████████████ the evidence from the ████████████ ██████████was then investigated by the federal government. Exhibit 7. A law

8

enforcement officer ███████████████████████████████████████ ████████████████ would likely sympathize with other officers who may bend the rules and regulations. It is highly unlikely he was an unknowing participant in ██ ████████████████████████████████████████ light of his later ████████████████████████ ███████████ of the evidence.

This is not merely a hypothetical discussion about truthfulness in Mr. William's case. His defense centered on the claim that the law enforcement officer conducting his controlled buys acted like a "cowboy," disregarding the established rules and regulations for handling confidential informants resulting in untrustworthy evidence. Trial Tr. at 300. The "cowboy," Detective Daniels, had previously made statements with reckless disregard for the truth in a search warrant application. Trial Tr. at 61. In Mr. William's case, Daniels handled a confidential informant who was caught stealing "buy" money. Trial Tr. at 93. And Daniels continued to use the confidential informant to make "controlled" buys even after this theft. If ever there was a juror who should not have served on this particular jury, ████████ was it. He could not have been impartial because his sympathies would have been with law enforcement that used questionable tactics potentially resulting in compromised evidence. Additionally, given that ████████ failed to answer several questions truthfully, his statement that he could be impartial does not pass the *Patton* test of credibility. Had ███████ answered the questions truthfully, several valid bases existed for making a valid challenge for cause.

III.    REQUEST

Based on the above, Mr. Williamson asks this Court to:

(a) Appoint undersigned counsel, *nunc pro tunc*, starting with drafting this motion, for the limited purpose of prosecuting this motion for indicative ruling and motion for new trial.

(b) Issue an Indictive Ruling that this motion raises a substantial issue that requires remand so this Court has jurisdiction to decide the issue on the merits under F.R.Crim.P. 37(a)3).

(c) Order the ███████████████████████ United States Attorney's Office and the Federal Bureau of Investigation to produce any and all files related to ██████████.

(d) Order the ██████████Police Department and ██████████ Sheriff's Department to produce the personnel and any disciplinary files of ██████████ to determine the timing and circumstances of his quitting the ██████████ Police Department, joining the ██████████ Sheriff's Department, and his subsequent termination.

(e) Allow additional briefing on the motion for new trial once the above evidence is received.

(f) Ultimately, grant Mr. Williamson a new trial.


Respectfully submitted,
By counsel:


S/ *Richard W. Weston*
Richard W. Weston (9734)
Weston Law
10 Sutherland Dr.
Huntington, WV 25705
(304) 522-4100
rww@304atty.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

Plaintiff

v.                                          CASE NO.: 2:22-cr-00154

ANDRE DEWAYNE WILLIAMSON

Defendant

### CERTIFICATE OF SERVICE

I, Richard Weston, counsel for the defendant, do hereby certify that on this 7th day of December 2023, I electronically filed "DEFENDANT'S MOTION FOR INDICATIVE RULING ON MOTION FOR NEW TRIAL" with the Clerk of the Court using the CM/ECF system which will send electronic notice of such filing to the following CM/ECF participant:

Joshua Hanks at josh.hanks@usdoj.gov.


S://_Richard W. Weston_____
Richard W. Weston (9734)

1           IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
2                      AT CHARLESTON

3    _____x
                                     :
4    UNITED STATES OF AMERICA,       :
                                     :   CRIMINAL NO.
5              Plaintiff,            :   2:22-cr-00154
                                     :
6                -vs-                :
                                     :
7    ANDRE DEWAYNE WILLIAMSON,       :
                                     :
8              Defendant.            :
     _____x   **VOIR DIRE**

9

10        **TRANSCRIPT OF JURY TRIAL PROCEEDINGS,**
       **BEFORE THE HONORABLE JOHN T. COPENHAVER, JR.,**
11        **SENIOR UNITED STATES DISTRICT JUDGE**
                   **MARCH 21, 2023**

12

13

14   **APPEARANCES:**
     **FOR THE PLAINTIFF:**          **AUSA JULIE M. WHITE**
15                                   **AUSA JOSHUA C. HANKS**
                                     Assistant United States Attorneys
16                                   U.S. Attorney's Office
                                     P.O. Box 1713
17                                   Charleston, WV  25326-1713

18

19   **FOR THE DEFENDANT:**         **TIM C. CARRICO, ESQUIRE**
                                     214 Capitol Street
20                                   Suite 100
                                     Charleston, WV 25301

21

22        Proceedings recorded by mechanical stenography,
     transcript produced by computer.

23

24   _____
              CATHERINE SCHUTTE-STANT, RDR, CRR
25            Federal Official Court Reporter
           300 Virginia Street East, Room 6009
                    Charleston, WV 25301

USA v WILLIAMSON

```
 1    towards the jurors just a moment, please.

 2         (Defendant, Andre Dewayne Williamson, stands.)

 3              THE COURT:  Thank you, Mr. Williamson.  And you

 4    may be seated.

 5         Ladies and gentlemen, are any of you related by blood

 6    or marriage to the defendant, Andre Williamson?

 7              PROSPECTIVE JURORS:  No.

 8              THE COURT:  Let's try that again, because that

 9    wasn't exactly a chorus.

10         Ladies and gentlemen, are any of you related by blood

11    or by marriage to Mr. Williamson?

12              PROSPECTIVE JURORS:  No.

13              THE COURT:  Are any of you acquainted with Mr.

14    Williamson?

15              PROSPECTIVE JURORS:  No.

16              THE COURT:  Have any of you ever heard of Mr.

17    Williamson before he's just now being introduced to you?

18              PROSPECTIVE JURORS:  No.

19              THE COURT:  I would ask, ladies and gentlemen,

20    whether or not you, or any member of your immediate

21    family -- and I'm going to define immediate family for you

22    now, because it applies throughout these many questions that

23    will be asked of you.

24         By immediate family, I mean you, or your spouse, or

25    your live-in companion, or anyone who lives in your same
```

USA v WILLIAMSON

1  household, as well as anyone who is a sister or brother, who

2  is a parent, anyone else, as I say, who is in your same

3  household living with you.

4      And with that in mind for immediate family, have you,

5  or any member of your immediate family, ever been

6  employed as a law enforcement officer in any capacity?

7            PROSPECTIVE JURORS:  No.

8            PROSPECTIVE JUROR:  Yes.

9            THE COURT:  Yes, ma'am.  And please stand and give

10  us your name.

11      Thank you.  Yes, ma'am.

12            PROSPECTIVE JUROR:  I'm trying to get it.

13            THE COURT:  When you speak, it might be well that

14  you remove your mask for just that purpose.

15            PROSPECTIVE JUROR:  ███████████████████  My

16  son is a police officer for Barboursville Police Department.

17            THE COURT:  And in what capacity does he serve?

18            PROSPECTIVE JUROR:  He's a patrolman.

19            THE COURT:  How long has he been in that position?

20            PROSPECTIVE JUROR:  For Barboursville, three

21  years.  Before that, Marshall University, two years.

22            THE COURT:  And what did he do at Marshall?

23            PROSPECTIVE JUROR:  Police, patrolman.

24            THE COURT:  And so he's been in service then for

25  about five years?

*Catherine Schutte-Stant, RDR, CRR (304) 347-3151*

USA v WILLIAMSON

```
1              PROSPECTIVE JUROR:  That is correct.

2              THE COURT:  Thank you.

3         Yes, sir.

4              PROSPECTIVE JUROR:  ███████████████.  My

5    brother-in-law is -- he retired as a Vienna police officer.

6              THE COURT:  And he served on the town of Vienna's

7    police force?

8              PROSPECTIVE JUROR:  He was in the sheriff's office

9    for a while, and then he went to the City of Vienna.

10             THE COURT:  I would ask the same question of both

11   of you, and you first, sir; would that have any bearing upon

12   your ability to serve as a fair and impartial juror in the

13   trial of this case?

14             PROSPECTIVE JUROR █████:  No.

15             THE COURT:  Thank you.

16        And, ma'am, the same question?

17             PROSPECTIVE JUROR █████:  Yes.

18             THE COURT:  You say it will have a bearing?

19             PROSPECTIVE JUROR:  Yes.

20             THE COURT:  Well, I'm going to ask you to tell me

21   more about that later on.

22             PROSPECTIVE JUROR:  Okay.

23             THE COURT:  Thank you.

24        Any other hand up?

25        Yes, sir.
```

USA v WILLIAMSON

1              PROSPECTIVE JUROR:  My name is ███████████.  My

2    number is Juror Number ██.  I'm a retired police ███████ for

3    the ████████████████████████████████████████████████.

4              THE COURT:  And how long did you serve in that

5    capacity?

6              PROSPECTIVE JUROR:  ███████████ -- I served two years

7    as c█████.  Prior to that, I came up through the ranks,

8    started as patrolman, and made sergeant, lieutenant, and

9    later became chief.

10        Prior to that, I worked for ███████████ Sheriff's

11   Department in ████████████████████, as a deputy sheriff

12   there.  Prior to that, with the ████████ Police Department, in

13   ████████████████████████████████

14             THE COURT:  How long have you been a police

15   officer?

16             PROSPECTIVE JUROR:  33 years.

17             THE COURT:  And retired now?

18             PROSPECTIVE JUROR:  Yes, sir, I am.

19             THE COURT:  Thank you.  Would that experience have

20   any bearing upon your ability to serve as a fair and

21   impartial juror in the trial of this case?

22             PROSPECTIVE JUROR:  No, sir.  No, sir, it

23   wouldn't.

24             THE COURT:  Thank you.

25        Lynn.

*Catherine Schutte-Stant, RDR, CRR (304) 347-3151*

USA v WILLIAMSON

1    ability to serve as a fair and impartial juror in the trial

2    of this case?

3              PROSPECTIVE JUROR:  No, sir.

4              THE COURT:  Thank you.

5         Ladies and gentlemen, aside from that, are any of you

6    acquainted with anyone who serves on the staff or as an

7    Assistant United States Attorney in the United States

8    Attorney's Office in this district?

9              PROSPECTIVE JURORS:  No.

10             PROSPECTIVE JUROR:  Yes.

11        (Hands raised.)

12             THE COURT:  And that is other than what you've

13   already answered.  And so there may be two hands up.

14             PROSPECTIVE JUROR:  ███████████████████.  I

15   am personally acquainted, we're friends and neighbors with

16   Troy Adams, who works here in this office.

17             THE COURT:  As a member of the staff?

18             PROSPECTIVE JUROR:  Yes, sir.  He's in the U.S.

19   Attorney's staff.  I think he's in the prosecutor's office.

20             THE COURT:  Would that have any bearing on your

21   ability to serve as a fair and impartial juror in the trial

22   of this case?

23             PROSPECTIVE JUROR:  No, sir.

24             THE COURT:  Thank you.

25             PROSPECTIVE JUROR:  ████████████████████

*Catherine Schutte-Stant, RDR, CRR (304) 347-3151*

USA v WILLIAMSON

1          Yes, one more.

2                  PROSPECTIVE JUROR:          ████████████████.  My

3     son was in North Central Regional Jail for a week, out on

4     bond.  And I believe the case has been dropped.

5                  THE COURT:  And you believe what?

6                  PROSPECTIVE JUROR:  I believe the case has been

7     dropped now.  So --

8                  THE COURT:  And any bearing on your ability to

9     serve in this case as a fair and impartial juror?

10                 PROSPECTIVE JUROR:  No, Your Honor.

11                 THE COURT:  Thank you.

12         Ladies and gentlemen, are you, or -- have you, or any

13    member of your immediate family, ever been involved with any

14    conflict, controversy, or litigation with any department or

15    agency of the United States, whether it's the United States

16    Attorney's Office or any other agency of the government of

17    the United States?

18                 PROSPECTIVE JURORS:  No.

19                 THE COURT:  And have any of you expressed, or do

20    any of you have any strong sentiment now about the justice

21    of any recent prosecution brought by the United States

22    Attorney's Office in this district?

23                 PROSPECTIVE JURORS:  No.

24                 THE COURT:  Have any of you ever had a dispute

25    with any of the following agencies:  the Charleston Police

USA v WILLIAMSON

```
 1              MS. WHITE:  No, Your Honor.  Thank you.

 2              MR. CARRICO:  No, sir.

 3              THE COURT:  ██████████, please don't discuss

 4    anything with any of the other jurors in the small group in

 5    the jury room you are going back to or the panel at large,

 6    for that matter.

 7         The Court is particularly concerned that, until this

 8    jury is selected, that you not have any discussion with

 9    anyone about the substance of the case or anything we've

10    discussed in here.

11         Thank you, sir.

12              PROSPECTIVE JUROR:  Thank you.

13         (Prospective Juror ████████████████ left the

14    courtroom.)

15              THE COURT:  Next?

16              MR. CARRICO:  Juror Number ██, Mr. ██████████

17    ██████.

18         (Prospective Juror █████████████████ entered the

19    courtroom.)

20              THE COURT:  Thank you, sir.

21         Counsel may have a few questions to ask of you, and I'm

22    going to ask Mr. Carrico to begin.

23              MR. CARRICO:  Thank you, sir.

24                        EXAMINATION

25    MR. CARRICO:
```

*Catherine Schutte-Stant, RDR, CRR (304) 347-3151*

USA v WILLIAMSON

1    **Q.**    Sir, I just have a few follow-up questions, really

2    based on the extent of your employment and previous law

3    enforcement experience.

4        In your years as -- were you the [REDACTED] Police for a

5    period of time?

6    **A.**    Yes, sir.  I was the [REDACTED] Police there.  I also

7    headed up the drug task force between [REDACTED] and our

8    department and several other departments.

9            THE COURT:  Let me ask, if you will, while you're

10   in here, you may remove your mask.

11           PROSPECTIVE JUROR:  Okay.  Thank you.

12           THE COURT:  Thank you.

13   BY MR. CARRICO:

14   **Q.**   And what was the name of the task force at the time?

15   **A.**   Well, we didn't have -- it wasn't -- it was an unnamed

16   task force.  It wasn't one, per se, that's been sponsored by

17   the state.  It was a volunteer type task force that we would

18   pull members from that work different areas of the county.

19   **Q.**   What years?

20   **A.**   Shoot -- a lot of years, a long time.  Let's see -- up

21   until [REDACTED], when I retired.

22   **Q.**   And were you doing the drug investigation work up until

23   that time?

24   **A.**   Yes.  Yes, sir.

25   **Q.**   And what -- what police agencies did you work with?

*Catherine Schutte-Stant, RDR, CRR (304) 347-3151*

USA v WILLIAMSON

```
 1   A.    ███████████████████Police, worked with DEA some, and
 2   worked with, of course, our department, the ████ Task Force
 3   in ████████████████ Police, ████████████ Police,
 4   ██████████████ Police, ███████████████ Sheriff's Department.
 5   Q.    And I know that you've heard, since these proceedings
 6   started, there has been reference to a confidential
 7   informant?
 8   A.    Yes.
 9   Q.    And in your experience, did you ever deal with
10   investigating crime and using a confidential informant?
11   A.    Many.
12   Q.    Many?
13   A.    Yes, many.
14   Q.    So, obviously, you're familiar with how that works?
15   A.    Yes.  Yes, sir, I do.
16   Q.    And the process and procedures that are to be followed
17   and whatnot?
18   A.    Yes.
19   Q.    Would that experience in any way affect your ability or
20   affect you or permit you from being impartial in this case
21   in determining the issues?
22   A.    No.  I don't think that it would.  If anything, it
23   would probably enhance whether they've done right or done
24   wrong.  So --
25   Q.    And when you were working drug cases, was -- what was
```

USA v WILLIAMSON

```
 1    -- let's say, when you retired, what was the primary

 2    substance that was being used at that time in the community?

 3    A.    Then, it was crack cocaine.  And then -- I had bought

 4    fentanyl at one time, bought it out of a hospital from a

 5    patient actually, a fentanyl patch.  But crack cocaine,

 6    cocaine, and a wide variety of pills, painkillers, Lortab,

 7    Oxycodone, things like that.  So that was -- and some

 8    marijuana.  But most of it was pills and coke and crack.

 9    Q.    And in your employment status, you weren't involved in

10    assisting people that were suffering from drug addiction or

11    anything like that, did you?

12    A.    No.  No, I didn't.

13    Q.    Sir, I don't have any other questions.  Thank you.

14          MS. WHITE:  I have no questions, Your Honor.

15    Thank you.

16          THE COURT:  ████, just be seated there a second.

17          PROSPECTIVE JUROR:  Oh, I'm sorry.

18          THE COURT:  Are you completely satisfied that you

19    can serve as a fair and impartial juror in the trial of this

20    case?

21          PROSPECTIVE JUROR:  Yes, sir.

22          THE COURT:  There is no doubt in your mind about

23    that?

24          PROSPECTIVE JUROR:  No doubt in my mind, Your

25    Honor.
```

*Catherine Schutte-Stant, RDR, CRR (304) 347-3151*

USA v WILLIAMSON

```
 1              THE COURT:  Thank you, sir.
 2        Any other questions?
 3              MS. WHITE:  No, thank you.
 4              MR. CARRICO:  No, sir.  Thank you.
 5              THE COURT:  Thank you, sir.  Please, when you go
 6   back in with the other jurors, don't mention anything that
 7   we've discussed here.
 8              PROSPECTIVE JUROR:  Absolutely.
 9              THE COURT:  Thank you.
10        (Prospective Juror ███████████ left the
11   courtroom.)
12              THE COURT:  Next.
13              MR. CARRICO:  Number ██, Your Honor.  That would
14   be ████████████
15              THE COURT:  Let me ask you about ███████████ before
16   he comes in.  He's got a root canal tomorrow; are you going
17   to let him have it?
18        We can discuss that in a moment.
19        (Prospective Juror ███████████ entered the
20   courtroom.)
21              THE COURT:  Go ahead.
22                       EXAMINATION
23   BY MR. CARRICO:
24   Q.    Yes, sir.  ████████ again, I'm Tim Carrico, and I
25   represent Mr. Williamson.  I just have a few questions I
```

USA v WILLIAMSON



```
 1    Court and the Jury Clerk.)

 2             THE CLERK:  As I call your name, you may get up

 3    and move to the far side of the courtroom, please.

 4    ████████████████████████████████████████████████

 5    ████████████████████████████████████████████

 6    █████████████████████████████████████████████████

 7    ███████████████████████████████████████████

 8    ██████████████████████████████████████████████████

 9    ███████████

10        As I call your name, I'm going to have you come up here

11    to make sure we got in the jury box here:

12    ██████████████████████████████████████████, if

13    you'd come up to the third seat, please.  And ████████████

14    █████████, if you'll go to Seat Number 4.

15           ██████████, you will be Seat Number 5.

16           ███████████████ Seat Number 6.  You can go this way.

17    Seat Number 7, ████████████████.

18    █████████████, you are in Seat Number 8, █████████████.

19    ██████████████████, Seat Number 9 here.

20    █████████████████.

21    ███████████████████

22    ███████████████████, you can have a seat.

23    ██████████████████, Seat Number 12 there.

24    ██████████████████.

25    And ████████████████████.
```

*Catherine Schutte-Stant, RDR, CRR (304) 347-3151*

USA v WILLIAMSON

 1              The jurors have been seated.

 2              (An off-the-record discussion was held between the

 3      Court and the Jury Clerk.)

 4                  THE CLERK:  The alternates for this case are --

 5      the first alternate is ███████████, and the second

 6      alternate is ██████████.

 7              If the parties would approach the bench, please.

 8          **(Sidebar).**

 9          **(All parties present and the defendant.)**

10                  THE COURT:  Do the parties have any objection to

11      the composition of the jury, the qualifications of any

12      member of the jury, or the manner of its selection?

13                  MS. WHITE:  No, Your Honor.

14                  MR. CARRICO:  No, sir.

15                  THE COURT:  We'll give them a few instructions,

16      and then we will recess for lunch.

17              Thank you.

18              ██████████:  Thank you.

19          **(Sidebar ends.)**

20              (Open court.)

21              (An off-the-record discussion was held between the law

22      clerk and the Court.)

23              (Pause.)

24                  THE COURT:  Unfortunately, we are going to be

25      delayed for a few more minutes.  And we'll simply have to

11

```
 1                  IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 2                           AT CHARLESTON

 3       _____x
                                      :
 4       UNITED STATES OF AMERICA,     :
                                       :   CRIMINAL ACTION NO.
 5              Plaintiff,             :   2:22-cr-00154
                                       :
 6                -vs-                  :
                                       :
 7       ANDRE DEWAYNE WILLIAMSON,      :
                                       :
 8              Defendant.             :
         _____x VOLUME I
 9

10                    JURY TRIAL PROCEEDINGS,
           BEFORE THE HONORABLE JOHN T. COPENHAVER, JR.,
11         SENIOR UNITED STATES DISTRICT JUDGE, and a jury,
                         MARCH 21, 2023
12

13

14       APPEARANCES:
         FOR THE PLAINTIFF:        AUSA JULIE M. WHITE
15                                 AUSA JOSHUA C. HANKS
                                   Assistant United States Attorneys
16                                 U.S. Attorney's Office
                                   P.O. Box 1713
17                                 Charleston, WV  25326-1713

18

19       FOR THE DEFENDANT:        TIM C. CARRICO, ESQUIRE
                                   214 Capitol Street
20                                 Suite 100
                                   Charleston, WV 25301
21

22           Proceedings recorded by mechanical stenography,
         transcript produced by computer.
23

24            _____
                   CATHERINE SCHUTTE-STANT, RDR, CRR
                      Federal Official Court Reporter
25                 300 Virginia Street East, Room 6009
                           Charleston, WV 25301
```

DANIELS - CROSS

1    way I worded it when I presented it to that judge.

2    **Q.**    Well, that information he found was false, it was

3    incorrect information, false information that you put in the

4    affidavit?  He found that in his opinion?

5    **A.**    That it was false?

6    **Q.**    Yes.

7    **A.**    That it was false?

8    **Q.**    That it was false information, meaning it was incorrect

9    information.  And then the second finding he made is, at a

10   minimum -- "at a minimum, the record very clearly supports a

11   finding that Detective Daniels acted with reckless disregard

12   for the truth when he stated in the warrant affidavit that"

13   -- Ms. Dunlap's -- "Ms. Dunlap delivered fentanyl to Mr.

14   Lark when he knew that no delivery or exchange had taken

15   place."

16        You don't remember that?

17   **A.**    That portion, yes, sir, I do.  And, again, I respect

18   Judge Goodwin's opinion completely.  But, again, the judge

19   that I swore that warrant in front of stated that he was

20   completely aware that that package wasn't actually placed in

21   the defendant's hands.  So the judge I raised my hand and

22   swore in front of was aware of the facts.  But Judge Goodwin

23   didn't like the way I worded that.

24   **Q.**    That was a magistrate across the street, the Kanawha

25   County Magistrate Court, correct?

DANIELS - CROSS (RESUMED)

1      money, correct?

2      **A.**    Well, yes, sir, so, that --

3      **Q.**    Well, you either did, or did you not?

4      **A.**    I did, yes, sir.  So I didn't charge him with the petit

5      larceny.  I charged him with obstruction.  If I would have

6      put the petit larceny -- we try to, basically, keep our CI

7      as safe as possible.  Had I charged him with the petit

8      larceny, I would have had to put in that criminal complaint

9      that he was buying drugs for the Metro Drug Unit and then he

10     stole money while doing that.  So the reason I charged him

11     with the hindering the investigation is he -- basically,

12     that buy money is considered evidence.  He concealed that

13     evidence.  And I charged him for the obstruction rather than

14     put all that in a criminal complaint and then put him out in

15     the jail with people that he's possibly worked cases with in

16     the past.

17     **Q.**    Well, he did commit a crime, didn't he?

18     **A.**    Yes, he concealed the evidence.  He concealed that

19     currency, he did, yes, sir.

20     **Q.**    And he did steal the money?

21     **A.**    He did, yes, sir.  He ultimately returned that money,

22     but he did conceal that money that day.

23     **Q.**    And he wasn't prosecuted for that, correct?

24     **A.**    That is correct.  Ultimately, we dismissed those

25     charges against Mr. Collins.

USA v WILLIAMSON

```
 1    gets a search warrant.  He goes in with the search warrant
 2    and finds meth and money.  He doesn't get charged.
 3        But a critical thing in the case -- that's why I kept
 4    asking, "Did you talk to a prosecutor?"  "Did you talk to a
 5    prosecutor?"
 6        "I don't remember."
 7        There was no oversight from any -- any prosecuting
 8    attorney related to these charges that he's picking up, and
 9    they're getting dismissed.
10        Effectively, what's going on is, he's acting like he's
11    a cowboy, with no checks and balances in effect.  Nothing.
12    And where it meshes together -- or where I'm confused from
13    the evidence is, is he working off charges, or is he just --
14    is what he's doing making purchases to work off charges or
15    is he working, doing purchases to make money, or is he
16    working off charges and getting paid to work off charges?
17        That's what it sounds like from the testimony.
18        And we also know -- my understanding is there were 36
19    controlled purchases he was involved in.  The CI said there
20    is more, I guess, that he didn't get paid for, allegedly,
21    but I guess they're undocumented.
22        But, most importantly, Officer Daniels knew what he was
23    dealing with when Mr. Collins came in.  He knew the drug
24    addiction issues.  Then he picks up a DUI.  So we know he's
25    a danger, and he's exposing people in the community.  That
```

344

USA v WILLIAMSON

1          THE COURT:  ▓▓▓▓▓▓▓?

2          JUROR ▓▓▓▓: Yes, Your Honor.

3          THE COURT:  ▓▓▓▓▓▓▓?

4          JUROR B▓▓▓▓: Yes, Your Honor.

5          THE COURT:  ▓▓▓▓▓▓?

6          JUROR ▓▓▓▓: Yes, Your Honor.

7          THE COURT:  ▓▓▓▓▓▓?

8          JUROR ▓▓▓▓: Yes, Your Honor.

9          THE COURT:  ▓▓▓▓▓▓?

10         JUROR ▓▓▓▓: Yes, Your Honor.

11         THE COURT:  ▓▓▓▓▓▓▓?

12         JUROR ▓▓▓▓▓▓: Yes, Your Honor.

13         THE COURT:  ▓▓▓▓▓▓?

14         JUROR ▓▓▓▓: Yes, Your Honor.

15         THE COURT:  ▓▓▓▓▓▓▓?

16         JUROR ▓▓▓▓▓: Yes, Your Honor.

17         THE COURT:  ▓▓▓▓▓▓?

18         JUROR ▓▓▓▓: Yes, Your Honor.

19         THE COURT:  Let me ask the parties whether or not

20    you have anything further before the jury is excused?

21         MS. ▓▓▓▓: No, Your Honor.  Thank you.

22         MR. CARRICO:  No, sir.  Thank you.

23         THE COURT:  The clerk will record the verdict.

24         Ladies and gentlemen, on behalf of the parties and the

25    Court, I want to thank you for being with us these three

*Catherine Schutte-Stant, RDR, CRR (304) 347-3151*






















































